```
           DISTRICT COURT OF THE VIRGIN ISLANDS
           DIVISION OF ST. THOMAS AND ST. JOHN
                    APPELLATE DIVISION
```

ALVIS C. VANTERPOOL, )
)
  Appellant, )
)
       v. )  D.C. Civ. App. No. 2007-31
)  re: Sup. Ct. Civ. No. 1995-509
)
CTF HOTEL MANAGEMENT CORP., )
)
  Appellee. )
)

On Appeal from the Superior Court of the Virgin Islands
the Honorable Rhys S. Hodge presiding.

Considered: October 15, 2010
Filed: October 30, 2013

BEFORE: **CURTIS V. GÓMEZ,** Chief Judge of the District Court of the Virgin Islands; and **RAYMOND L. FINCH,** Judge of the District Court of the Virgin Islands.[1]

APPEARANCES:

**Desmond L. Maynard, Esq.**
St. Thomas, VI
   *For the appellant.*

**Bruce P. Bennett, Esq.**
St. Croix, VI
   *For the appellee.*

---

[1] While Judge Darryl Dean Donohue, Sr., Presiding Judge of the Superior Court of the Virgin Islands, Division of St. Croix, sat on the panel that considered this matter, he retired before the decision was issued.

*Vanterpool v. CTF*
D.C. Civ. App. No. 2007-31
Memorandum Opinion
Page 2

## MEMORANDUM OPINION

**PER CURIAM,**

Before the Court is the appeal of Alvis Vanterpool ("Vanterpool") of a November 29, 2006, Order of the Superior Court of the Virgin Islands, Division of St. Thomas and St. John,[2] granting summary judgment in favor of CTF Hotel Management Corporation ("CTF") and dismissing Vanterpool's action with prejudice.

### I. FACTS

Vanterpool was employed by International Private Power, Inc. ("IPPI") as a chief engineer. IPPI served as an independent contractor for CTF. CTF operated and managed the Stouffer's Grand Beach Resort.

Pursuant to a contract, IPPI agreed to provide electric power, hot water, and steam to the resort (the "Contract"). IPPI leased property located at the resort from Hotel Investors Limited Partnership ("Hotel Investors") on which to operate a

---

[2] Prior to 2005, the trial court was known as the Territorial Court of the Virgin Islands and its judges were referred to as Territorial Court Judges. Effective January 1, 2005, however, the name of the Territorial Court changed to Superior Court of the Virgin Islands. *See* Act of Oct. 29, 2004, No. 6687, sec. 6, § 2, 2004 V.I. Legis. 6687 (2004). Recognizing this renaming, we employ the terms Superior Court and Superior Court Judge.

Vanterpool v. CTF
D.C. Civ. App. No. 2007-31
Memorandum Opinion
Page 3

power plant.[3] The Contract provided that the generating equipment used to supply power, hot water, and steam, was the personal property of IPPI. It further stated that the responsibility for maintenance of the power plant would rest with IPPI.

On July 1, 2003, Vanterpool was directed by his IPPI supervisor, George Finer, to repair a leak in one of the power plant's generators. Vanterpool testified that he needed to remove a plate sitting on the top of the generator in order to complete the repair. There was no catwalk, scaffold, handholds, or work platforms leading to the top of the generator. Vanterpool noted that he had complained about the lack of such a safety device to both IPPI and CTF personnel. In order to reach the plate, Vanterpool testified that he was forced to climb the generator's pipes. He slipped while attempting to scale the generator and sustained injuries.

On June 30, 1995, Vanterpool filed suit in the Superior Court of the Virgin Islands against CTF for injuries and damages arising from his fall. CTF filed a motion for summary judgment. The trial Court denied the motion. Subsequently, CTF filed a

---

[3] CTF's predecessor acted as an agent of Hotel Investors in securing the agreement with IPPI regarding the supply of power, hot water, and steam to the resort.

*Vanterpool v. CTF*
D.C. Civ. App. No. 2007-31
Memorandum Opinion
Page 4

"renewed" motion for summary judgment. On November 29, 2006, the trial court granted that motion and dismissed the action.

Thereafter, Vanterpool filed a timely notice of appeal of the trial court's grant of summary judgment. Vanterpool raises a single issue on appeal: whether the Superior Court erred in granting CTF's motion for summary judgment.

## II. **JURISDICTION & STANDARD OF REVIEW**

This Court has jurisdiction to review final judgments and orders of the Superior Court of the Virgin Islands, including orders granting or denying petitions for admission to the Virgin Islands Bar. *See* Revised Organic Act of 1954 23A, 48 U.S.C. § 1613a; Act No. 6730 § 54(d)(1) (Omnibus Justice Act of 2005).

"The trial court's grant of summary judgment is afforded plenary review." *Wing-It Delivery Servs. v. V.I. Cmty. Bank*, 47 V.I. 506, 509 (D.V.I. App. Div. 2005). We will affirm the grant of summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact" and that the movant is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c); *see also Disabled in Action of Pa. v. Southeastern Pa. Transp. Auth.*, 539 F.3d 199, 207 (3d Cir. 2008).

*Vanterpool v. CTF*
D.C. Civ. App. No. 2007-31
Memorandum Opinion
Page 5

An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). A fact is material if its determination would affect the outcome of the case. *See Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994). In making this determination, we "view the facts in the light most favorable" to the non-moving party and "draw all inferences" in the non-moving party's favor. *See Disabled in Action of Pa.*, 539 F.3d at 207-08.

Where the trial court's determination was based on its application of legal precepts or interpretation of a statute, such determination is subject to *de novo* review. *See Saludes v. Ramos*, 744 F.2d 992 (3d Cir. 1984); *Mapes Monde, Ltd. v. A.H. Riise Gift Shop, Inc.*, 337 F. Supp. 2d 704, 707 (D.V.I. App. Div. 2004). Findings of fact made by the Superior Court are not to be disturbed unless they are clearly erroneous. *Lenhart v. Richards*, 17 V.I. 619 (3d Cir. 1980); *T-Shirt World, Inc. v. Artland, Inc.*, 20 V.I. 147 (D.V.I. 1983).

### III. **ANALYSIS**

Vanterpool asserts that the Superior Court overlooked genuine issues of material fact that existed with respect to

*Vanterpool v. CTF*
D.C. Civ. App. No. 2007-31
Memorandum Opinion
Page 6

CTF's liability arising from its interests in the IPPI workplace and over the land on which the power plant was located.

### A. Control Over the Workplace

Vanterpool asserts that a genuine issue of material fact existed as to whether CTF retained control over the work being performed at the power plant. No provision of the Virgin Islands Code speaks to the liability of an employer of an independent contractor for an injury suffered by an employee of the independent contractor. Where the Virgin Islands Code is silent on an issue, the Restatement serves as the relevant source of law. *See* V.I. CODE. ANN., tit. 1, § 4 (providing that "[t]he rules of the common law, as expressed in the restatements of the law approved by the American Law Institute . . . shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary.")

Section 414 of the Restatement (Second) of Torts ("section 414") provides:

> One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for bodily harm to others, for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

RESTATEMENT (SECOND) OF TORTS § 414.

*Vanterpool v. CTF*
D.C. Civ. App. No. 2007-31
Memorandum Opinion
Page 7

Comment c. of that section further describes the type of control necessary for an employer to be deemed liable under the retained control rule:

> In order for the rule stated in this Section to apply, the employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations.... There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way.

*Id.* at cmt. c.

The extent of the control that CTF maintained over IPPI's work is thus significant to its potential liability. *See Carty v. Hess Oil V.I. Corp.*, 78 F. Supp. 2d 417, 420 (D.V.I. 1999)("[T]he extent of control retained by the employer is the threshold inquiry . . . ."). This Court has cited the following as indicia of an employer's control over an independent contractor's actions: "where an employer assumes affirmative duties, directs the method of performance of those duties, or offers specific instruction regarding the manner of performance, he may be liable when he exercises that control without due care." *Figueroa v. Hess Oil V.I. Corp.*, 198 F. Supp. 2d 632, 644 (D.V.I. 2002). In effect, section 414 "impose[s] liability only on owners retaining

*Vanterpool v. CTF*
D.C. Civ. App. No. 2007-31
Memorandum Opinion
Page 8

control over the actual conduct of the work." *Hood v. Hess Oil V.I. Corp.*, 650 F. Supp. 678, 681 (D.V.I. 1986).

Vanterpool relies on *Figueroa v. Hess Oil V.I. Corp.*, 198 F. Supp. 2d 632 (D.V.I. 2002) in support of his argument that CTF was in control of the work. In that case, the trial court granted judgment as a matter of law in favor of employer, Hess Oil Virgin Islands Corporation ("HOVIC"), on a negligence claim for injuries sustained by an employee of its independent contractor. HOVIC had employed an independent contractor, United Ogden Services, to operate a cafeteria on its premises. The employee slipped on the kitchen floor of the cafeteria and filed suit against HOVIC.

On appeal, this Court's Appellate Division concluded that the trial court erred in entering judgment as a matter of law because there was an issue of material fact with respect to HOVIC's control over the cafeteria as a workplace. The Court found that

> HOVIC expressly assumed affirmative duties with respect to safety in the workplace, and thereby retained sufficient control to be held liable when it failed to perform those duties with care....
>
> HOVIC provided and supplied the salad bars to be used by United Ogden. HOVIC repaired the floor and installed the defective drains and draining devices. HOVIC installed the white floor tiles that were indistinguishable from clear water....

*Vanterpool v. CTF*
D.C. Civ. App. No. 2007-31
Memorandum Opinion
Page 9

*Figueroa*, 198 F. Supp. 2d at 644.

The Court noted that "[s]ince United Ogden could only use the equipment and facilities provided by HOVIC, HOVIC thereby controlled the manner in which United Ogden carried out its obligations under the contract . . . ." *Id.*

Here, CTF did not provide the equipment used by IPPI, as it was the personal property of IPPI. Any claim as to CTF's control over IPPI's operations is much more attenuated.

Vanterpool also seizes upon the *Figueroa* Court's discussion of HOVIC's oversight over workplace safety as relevant to his claim of CTF's liability:

> Additionally, HOVIC employed safety experts, conducted walk-throughs, and created a Safety and Health Policy that set forth a detailed description of HOVIC's affirmative duties. The policy expressly provided that HOVIC would monitor for compliance with the policy and "shall in *all aspects of operations* provide a safe and healthy working environment for its employees, contractors, and customers [.]" (J.A. Vol. II at 536 (emphasis added).) Clearly, this evidences supervisory "control" over the manner in which United Ogden did its work, being far in excess of what one would ordinarily exercise over an independent contractor. Therefore, pursuant to the Restatement, HOVIC must exercise those duties with care.

*Id.* at 645.

Here, the Contract places responsibility for safety and maintenance decisions firmly with IPPI. (J.A. 4, Contract Section 6) ("Service Provider shall perform all routine and emergency

*Vanterpool v. CTF*
D.C. Civ. App. No. 2007-31
Memorandum Opinion
Page 10

maintenance of the system.") Vanterpool however, argues that a provision in the Contract stipulating that the premises "shall be for the exclusive use of Service Provider, and shall not be accessible to any party without prior written approval by the Service Provider *with the exception* of personnel designated by Service recipient" demonstrates that CTF retained control over who had access to the property. (J.A. 2, Contract Section 5(1)) (emphasis supplied).

The contractual right arising from that provision is merely an exception to the general rule. Notwithstanding its characterization as an exception, the contractual right to designate visitors who may enter has no conspicuous impact on "the method of performance" or "operative detail" of IPPI. *See generally Figueroa*, 198 F. Supp. 2d. at 644 ("Control is not predicated upon the day-to-day activities of a general overseer. It involves a more intricate involvement in the work to be done and may be established by showing that the employer retained a degree of control over the manner in which the work is to be done."); *see also* RESTATEMENT (SECOND) OF TORTS § 414 cmt. c. There is no suggestion that IPPI was hindered in its "free[dom] to do the work in [its] own way." *See* RESTATEMENT (SECOND) OF TORTS § 414 cmt. c.

*Vanterpool v. CTF*
D.C. Civ. App. No. 2007-31
Memorandum Opinion
Page 11

an excerpt from the testimony of Annice Canton ("Canton"), an engineer at CTF. Canton's testimony suggests that IPPI answered to "[CTF's] chief engineer and general manager, more specifically the chief engineer or the director of engineering with regards to how the plant needed to be run." (J.A. 161). However, Canton's testimony failed to establish that any CTF personnel issued directives about how IPPI should operate its power plant. Rather, Canton testified that "IPPI was responsible for that plant and so they handled the regular R and M, preventive maintenance, and the running of the plant, the day-to-day operations of the plant." *Id.*

Vanterpool cites his own testimony that a CTF employee responsible for general maintenance would "come around periodically to inspect the plant." (J.A. 265). No evidence presented by Vanterpool suggested that CTF's maintenance supervisor influenced the work processes of IPPI's power plant operations. As such, the Court does not find that conducting occasional safety checks represents the manner of retained control contemplated by section 414. *Cf. Ibrahim v. V.I. Water & Power Auth.*, 1996 WL 493172, * 3 (D.V.I. 1996)(granting summary judgment because, in light of WAPA's non-involvement in instructing or directing the independent contractor's activities, there was no showing that WAPA wielded the control necessary for

*Vanterpool v. CTF*
D.C. Civ. App. No. 2007-31
Memorandum Opinion
Page 12

instructing or directing the independent contractor's activities, there was no showing that WAPA wielded the control necessary for § 414). The Court thus finds no error with the trial court's determination that there was no genuine issue of fact as to CTF's liability under section 414.

### B. CTF's Liability as a "Possessor of Land"

Vanterpool also argues that there was a genuine issue of material fact as to whether CTF was liable as a "possessor of land." Section 343 of the Restatement (Second) of Torts provides:

> A *possessor of land* is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (c) fails to exercise reasonable care to protect them against the danger.

RESTATEMENT (SECOND) OF TORTS § 343 (emphasis supplied). In the context of the duty owed by an employer to an independent contractor, "section 343 is referred to as the 'safe workplace' doctrine, under which one who contracts with an independent contractor has a duty to provide a safe workplace for the

*Vanterpool v. CTF*
D.C. Civ. App. No. 2007-31
Memorandum Opinion
Page 13

employees of the independent contractor." *Williams v. Martin Marietta Alumina*, 817 F.2d 1030, 1035 (3d Cir. 1987)(quoting *Donavan v. General Motors*, 762 F.2d 701, 704 (8th Cir. 1985)).

The Restatement (Second) of Torts defines "possessor of land" as:

> (a) *a person who is in occupation of the land with intent to control it* or
>
> (b) a person who has been in occupation of land with intent to control it, if no other person has subsequently occupied it with intent to control it, or
>
> (c) a person who is entitled to immediate occupation of the land, if no other person is in possession under Clauses (a) and (b).

Restatement (Second) of Torts § 328E (emphasis added).

"Occupation" is defined as "physical control over land." Black's Law Dictionary 973 (5th ed. 1979)

The lease agreement between IPPI and Hotel Investors provides that "the demised premises shall be *used and occupied* by Lessee in accordance with the terms and conditions of the purchase and sale contract described above." (J.A. 149) (emphasis supplied). The Contract provides that the leased premises were for "the *exclusive use* of the Service Provider." (J.A. 129) (emphasis supplied).

Vanterpool essentially asserts that, because CTF reserved the right to designate personnel who could access the premises, CTF qualified as a "possessor" of the premises. Vanterpool has

*Vanterpool v. CTF*
D.C. Civ. App. No. 2007-31
Memorandum Opinion
Page 14

failed to provide any authority for such an expansive understanding of "possessor."

The express provisions of the lease agreement and the Contract make it clear that IPPI occupied the property exclusively. The Court has already found that CTF did not retain control over the workplace. As such, the Court is not convinced that CTF qualified as a "possessor of land." *See* Restatement (Second) of Torts § 328E (defining a "possessor of land" as "a person who is in occupation of the land with intent to control it"). The Court thus finds no error with the trial court's determination that there was no genuine issue of fact as to CTF's liability as a "possessor of land."

### C. CTF's Liability For Non-Compliance with OSHA Safety Standards

Vanterpool argues that CTF breached its duty to provide a safe workplace under the Virgin Islands Code. Section 35 of title 24 ("section 35") of the Code provides:

> Each owner, lessor, agent or manager of any premises used in whole or in part as a place of employment shall comply with the Safety and Health Standards, and all rules regulations and orders issued pursuant to the penalties and enforcement procedures of this chapter . . . .

V.I. CODE ANN. TIT 24, § 35 (amended 2006). Vanterpool contends that CTF was simultaneously a lessor, agent, and manager for the purposes of section 35. CTF did not own or lease the premises.

Vanterpool v. CTF
D.C. Civ. App. No. 2007-31
Memorandum Opinion
Page 15

Rather, in securing a contract for IPPI's provision of electric power, hot water, and steam to Hotel Investors, CTF's predecessor served as an agent of Hotel Investors. As such, CTF was an agent of the lessor. Given the ambiguous wording of section 35, it is unclear whether being an agent of a lessor for the purposes of a contract would qualify an entity as an "agent . . . of any premises" under 24 V.I.C. § 35. The Court need not reach that issue. Even assuming *arguendo* that under section 35, CTF was responsible for ensuring compliance with safety standards, Vanterpool has failed to cite a regulation that would give rise to CTF's liability for safety issues related to the generator.

In dismissing Vanterpool's OSHA argument at the summary judgment stage, the trial court cited 29 C.F.R. § 1915.77. That regulation states that scaffolding is only required at elevations of greater than five feet above a solid surface. Given that Vanterpool asserted that he fell between four and five feet, the trial court determined that no scaffolding was necessary.

Vanterpool challenges the trial court's reliance on 29 C.F.R. § 1915.77 because he asserts that the regulation's application is limited to shipyards. The Court has reviewed the OSHA regulations and has found no other regulation mandating the

Vanterpool v. CTF
D.C. Civ. App. No. 2007-31
Memorandum Opinion
Page 16

use of scaffolding at a workplace.[4] In the absence of a regulation on point, the Court finds the trial court's analogy to the scaffolding rules at a shipyard work site was appropriate.

## IV. CONCLUSION

For the reasons discussed above, the Court will affirm the Superior Court's Order granting summary judgment in CTF's favor and dismissing the action. An appropriate judgment follows.

---

[4] 29 C.F.R. § 1926.451 provides regulations for the composition of any scaffolding used in a workplace, but does not set forth the conditions under which scaffolding is required.